41 So.2d 611

## DEPARTMENT OF INDUSTRIAL RELATIONS et al. v. WALL.

### 7 Div. 24.

Court of Appeals of Alabama.
July 19, 1949.

Lusk, Swann & Burns, of Gadsden, for appellants.

Geo. D. Motley, Sr., and Robinson & Parris, of Gadsden, for appellee.

CARR, Judge.

This cause was tried below by the court without the aid of a jury. A judgment was rendered in favor of the claimant, plaintiff below.

A recitation of the history of the proceedings and an accurate delineation of the tendencies of the evidence will be taken from brief of appellants' counsel:

"Appellant, Dwight Manufacturing Company, is engaged in the textile manufacturing business in Gadsden, Alabama, and formerly employed Louise W. Wall, appellee, as a spare hand and smash hand in the weave room of their plant. On June 6, 1945, appellee quit her employment due to illness, but returned to work on September 24, 1945. During the month of November, 1945, appellee was transferred by the company from the upstairs weave room to the downstairs weave room in the same department as a smash hand. Appellee refused to work in this department claiming that she was unable to do the work even though she testified that she made no effort to operate the machines assigned her.

"The machines in this department were slightly longer, higher and faster than those on which appellee had been working but otherwise were identical with machines in the upstairs weave room and the rate of pay was the same. Her refusal to work resulted in the termination of her employment. Appellee had previously filed for benefits at the employment office as a result of her unemployment on June 6, 1945, and after her termination on this occasion, she filed for benefits on November 9, 1945. She

registered for twenty weeks with the employment office but made no effort during that time to find other employment, contenting herself with registering at this office once a week.

"Appellee's claim, based on the November termination, was denied by the Department of Industrial Relations Claims Examiner on the ground that appellee voluntarily left her employment without good cause connected with her work. Appellee appealed this decision to the Appeals Tribunal, which reversed the Claims Examiner on June 6th claim and removed appellee's disqualifications. This ruling was appealed by Dwight Manufacturing Company, employer, to the Board of Appeals on the ground that there were two claims filed, one in June and one in November, 1945, and that the Appeals Tribunal did not take the November claim into consideration in its findings. The Board of Appeals found the June 6th separation was due to illness and that appellee quit her job with good cause, and further found the leaving of her job by appellee in November was voluntary and without good cause connected with her employment and disqualified appellee on the November claim on this ground. Appellee appealed to the Circuit Court on the November claim and the Circuit Court found the issues in favor of the appellee and ordered the disqualifications removed, from which decision appellant has brought this appeal."

To the above may be added that the appellee testified that when she was ordered transferred to the downstairs weave room she made no effort to work at her new assignment. Her refusal to assume these new duties occasioned her discharge. It appears also from the evidence that she made no effort to obtain any employment during the period for which she claimed benefits and for which she now sues.

Without question or contention to the contrary, the appellee fully met the requirements of Subsecs. A and B of Sec. 213, Title 26, Code 1940, as amended.

We are here primarily concerned with whether or not there was a compliance with the provisions of these sections of the same title (we copy only pertinent parts):

"Sec. 213. An unemployed individual shall be eligible to receive benefits with respect to any week only if the director finds that—

"C. He is physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work either at a locality at which he earned wages for insured work during his base period or at a locality where it may reasonably be expected that such work may be available."

"Sec. 214. An individual shall be disqualified for benefits for total or partial unemployment:—

"B. If he has left his work voluntarily without good cause connected with such work."

"When a claimant admits that he voluntarily left his employment but seeks to avoid the disqualifications from receiving benefits set up in Subsec. B of § 214, Title 26, supra, we think that the burden is upon him to show that he had good cause connected with his work for leaving such employment." Henderson v. Department of Industrial Relations et al., 252 Ala. 239, 40 So.2d 629, 630.

The appellee qualified as a "smash hand" or "spare hand" in appellant's plant. She had worked in this capacity for about six months.

She was ordered transferred to another weave room in the same department and with the same scale of pay. It appears that the machines in the downstairs department were similar in manner and mode of operation to those on which the claimant had been working, with the exception that the former were slightly larger.

Appellee made no effort to undertake or try to perform the duties of her new assignment, but refused to work as directed because she entertained the view that she was unable to operate the larger machine. Other employees of the mill were operating the larger machines without difficulty or complaint.

We are clear to the conclusion that the claimant under the proof did not have good cause for leaving her employment. Subsec. B, Sec. 214, supra.

Our views are supported in a very substantial way by the holding in the recent case of Henderson v. Department of Industrial Relations et al., supra. The facts are strikingly similar to those in the case at bar:

"Henderson's primary duty was to move plastic cans containing a light cotton material from one machine to another. The evidence tends to show that these cans had to be moved approximately every thirty minutes during his eight-hour shift. During the last year of his employment he was charged with the performance of two additional duties. One of them he had to perform only twice a week, and each performance required only fifteen minutes. The other was to be done every day and, according to his statement, could be accomplished in about one and one-half hours. Neither of such duties required much physical exertion. Both of them merely required the use of light mechanical equipment with which certain portions of the premises and equipment were cleaned.

"Henderson was not discriminated against in this regard. Other employees of the mill whose primary duty was to move 'cans' on other shifts were given the same or similar additional duties."

On the basis of these circumstances the Supreme Court held that the trial judge was in error in awarding unemployment benefits to the claimant.

We entertain the opinion, also, that other requisite conditions of the statute were not met by the appellee.

■ During the period for which she claimed benefits, she did not apply to any person or firm for employment, although the proof showed that there were several textile manufacturers in the near vicinity to appellee's home.

"The (unemployment compensation) law does not contemplate that a job must seek out the man and coax him to come to work. It presupposes some effort on the part of the employee to secure work." Canton Malleable Iron Co. v. Green, 75 Ohio App. 526, 62 N.E.2d 756, 759.

Writing for the Supreme Court in Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So.2d 496, 498, Justice Lawson observed: "When Tomlinson became unemployed due to his refusal to work as a watchman, he contented himself with filing his claim for benefits, registering for work with the unemployment office, and reporting to that office weekly. He was entirely passive as to his status. He was waiting for work to seek him out. Although he testified that his physical infirmities were not of such a nature as to prevent him from performing some of the types of work in which he had been engaged, he did not seek a job. He called on none of his former employers, nor did he seek a job of any kind or character."

We are certainly unable to find how these circumstances differ in material aspect from the facts in the case at bar. The claimant here contented herself with only filing her claim for benefits, registering for work and reporting to the unemployment office weekly. Clearly she did not make a reasonable effort, or any effort in fact, to secure suitable employment of a character which she was qualified to perform.

In this state of the evidence, the appellee failed to show that she was "available for work" within the meaning and requirements of the applicable statute.

■ We do not overlook the fact that the unemployment compensation law was enacted for a beneficent purpose and it should be construed liberally in favor of the unemployed claimant. However, it was not intended to afford payment of unmerited doles or to provide vacations with pay.

■ The law seeks to relieve the consequences and vicissitudes of unavoidable and enforced unemployment which was not brought about by the voluntary creation of the former worker.

■ In reaching our conclusion we have given due consideration to the doctrine of review when the cause is tried below by the court without a jury. However, the evidence in the case at bar is without substantial dispute, and in our view the trial judge misapplied the law to these undisputed facts. Department of Industrial Relations v. Tomlinson, supra; Fiquett v. Wade

Electric Light & Power Co., 206 Ala. 630, 91 So. 357.

Appellee's counsel makes complaint in brief that there are no assignments of error. The record which is on file for our review contains errors duly assigned.

It is ordered that the judgment of the court below be reversed and the cause remanded.

Reversed and remanded.

BRICKEN, P. J., not sitting.